# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-565V

|  |  |
|---|---|
| PATRICIA ALANIS, *as mother and natural guardian of minor child, I.A.*, <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Chief Special Master Corcoran <br><br> Filed: May 13, 2025 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On May 24, 2022, Patricia Alanis, as mother and natural guardian of minor child, I.A., filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). On June 5, 2023, Respondent filed a Rule 4(c) Report conceding entitlement. ECF No. 20. But the parties were unable to resolve damages informally, so they agreed instead to submit this dispute for resolution at an expedited "Motions Day" hearing.

For the reasons set forth below, I award **$140,000.00** for actual pain and suffering, and **$1,383.60** for past unreimbursable expenses.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**I.       Medical Records**

I.A. (aged eleven at the time) received a flu vaccine on October 11, 2019. Ex. 1 at 2-3. On October 24, 2019, thirteen days after vaccination, I.A. reported bilateral leg pain, tingling, and weakness for two the previous two days. Ex. 2 at 21. A physical exam showed increased pain and tingling in his posterior thigh muscles, lower extremity weakness, and mild ataxia with walking. He was sent to Loyola University Medical Center for additional care. *Id.* at 24.

At the Loyola medical center, an MRI showed nonspecific finding suggestive of GBS. Ex. 5 at 273-74. I.A. was then admitted from October 24 to 31, 2019. *Id.* at 233. A lumbar puncture and course of IVIg was ordered. *Id.* at 104.

I.A. was transferred to an inpatient rehabilitation facility on October 31, 2019. Ex. 5 at 233. He was now able to walk with assistance and received four doses of IVIg, but continued to show impaired mobility, gait impairment, and neuropathic pain. Ex. 3 at 45. He was discharged on November 14, 2019. *Id.* at 49.

At a follow-up with his neurologist, I.A. was "able to walk independently with significant struggling and very unsteady gait." Ex. 5 at 819-20. Between November 19, 2019 and February 28, 2020, I.A. attended twenty-five physical therapy sessions. Ex. 4 at 18-102. I.A. also had occupational therapy, attending eight sessions between November 21, 2018 and May 20, 2020. *Id.* at 103-04.

On March 13, 2020, I.A. had another follow-up with his neurologist. Ex. 5 at 837-38. He reported intermittent leg pain but no other issues. His GBS was assessed s being "almost fully resolved" at that time. *Id.* at 838. I.A. was discharged from physical therapy on March 17, 2020 having met is goals. Ex. 4 at 103-04.

I.A. reported lingering sequelae, including intermittent calf pain and fatigue until at last November 16, 2023. See Ex. 7 at 1 (record from May 29, 2020 reporting discomfort in I.A.'s legs during activates); Ex. 6 at 1 (record from October 2, 2020, reporting occasional pain in his calf after running), Ex. 6 at 4 (record from November 9, 2021 noting "cramp-like" pain in his legs during physical activity); Ex. 11 at 1 (record from November 16, 2023 stating I.A.'s legs would hurt mostly when running and jumping). However, his GBS was reported as fully resolved during this period. Ex. 6 at 4-5 (reporting that I.A. had not had a GBS relapse since receiving IVIg in 2019); Ex. 9 at 1-2 (record from November 14, 2022 noting I.A.'s GBS had "fully resolved").

**II.     Damages**

Petitioner requests $240,000.00 for pain and suffering, and $1,823.59 for unreimbursable expenses. Petitioner's Opening Brief on Damages ("Pet. Br."), ECF No. 34, at 7; Petitioner's Reply to Respondent's Brief on Damages ("Reply"), ECF No. 36, at 2-5; Status Report filed December 19, 2024 ("SR"), ECF No. 38, at 1-2. Respondent counters that a lower award of $87,500.00 is appropriate for pain and suffering, and expenses should be reduced by $523.33. Respondent's Brief on Damages ("Opp."), ECF No. 35, at 7-10.

After listening to the arguments of both sides, I orally announced my ruling on damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A), at the conclusion of the April 30, 2025 hearing. An official recording of the proceeding was taken by a court reporter, although a transcript has not yet been filed in this matter. I hereby fully adopt and incorporate that oral ruling as officially recorded.

In a recent decision I discussed at length the legal standards to be considered in determining damages and prior GBS compensation within SPU. I incorporate herein my prior discussion in Section II of *Ashcraft v. Sec'y of Health & Hum. Servs.*, No. 23-1885V, 2025 WL 882752, at *2-4 (Fed. Cl. Feb. 27, 2025) to the instant Ruling and Decision. Additionally, the official recording of my oral ruling includes my discussion of various comparable cases as well as specific facts relating to Petitioner's medical history and experience that further informed my resolution of this matter.

**III.    Appropriate Compensation for Pain and Suffering**

In this case, awareness of the injury is not disputed. The record reflects that at all times I.A. had no impairments that would impact the awareness of his injury. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury. When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, all assertions made by the parties in written documents, and the arguments presented during the Motions Day hearing.

Petitioner does not cite comparable cases in support of her request for $240,000.00, stating that this case is "unique in that the individual who suffered a severe case of GBS was a young minor." Pet. Br. at 9, 12. In addition, she emphasizes that I.A. was unable to walk without assistance while hospitalized and experienced significant fear during treatment. His treatment was also extensive, including an MRI, IVIg, pain medication, three weeks of hospitalization, and forty-seven therapy sessions over

3

approximately six months. I.A. continues to suffer from weakness and pain in his lower extremities four years after the initial diagnosis of GBS. *Id.* at 12.

Respondent argues that while I.A. initially had significant discomfort, his GBS was not as severe as other cases. Within five months of vaccination he was discharged from physical therapy having met his goals. Opp. at 7-8. Respondent cites to two cases awarding sums for pain and suffering comparable to what he proposes. *Id.* at 8-9, citing to *Geschwinder v. HHS*, No. 17-1558V, 2022 WL 177372 (Fed. Cl. Spec. Mstr. Jan. 28, 2022) and *Granville v. HHS*, No. 21-2098V, 2023 WL 6441388 (Fed. Cl. Aug. 30, 2023).

The record in this case best supports the conclusion that I.A. did not suffer severe GBS, when compared to other Program claimants. His treatment occurred over approximately five months, and consisted of an MRI, a lumbar puncture, IVIG, pain medication, three weeks of hospitalization, and 47 therapy sessions. He did report lingering sequelae, but they appear to have been mild and intermittent.

Petitioner is correct in that this case is unique - but all GBS cases are unique to the petitioner and/or patient. Although individual factors are important, consideration of comparable cases is key in coming to an appropriate damages valuation. There is certainly a range in GBS cases where recover is often not always complete, and age absolutely is a factor in both for the ability to recover and the impact on the petitioner's suffering.

There have been a handful of GBS cases involving minors, including non-SPU cases such as *Rastetter v. Sec.y' of Health & Hum. Servs.*. No. 19-1840V, 2023 WL 5552317 (Fed. Cl. Spec. Mstr. Aug. 3, 2023). The injured party in that case (a 13-year-old) was awarded $195,000 for a severe case of GBS that involved 34 days of hospitalization, intubation, and two rounds of IVIg. I.A. had a significantly milder case of GBS that did not involve intubation, less hospitalization, and only one round of IVIg.

Another case involving a minor, *Maxwell v. Sec'y of Health & Hum. Servs.*, provides an even better comparable decision. No. 21-1877V, 2024 WL 1343007 (Fed. Cl. Spec. Mstr. Feb. 27, 2024) (awarding $140,000.00 for pain and suffering). The minor in question was 17 years old, and was hospitalized for nine days, with an additional seven days in in-patient rehabilitation. He showed significant improvement within four months, had physical therapy thereafter and showed lingering fatigue. I.A. had initially more severe care and hospitalization, but quickly improved. Additionally, there is no evidence of permanent disability in either case aside from lingering sequalae such as intermittent fatigue.

4

Balancing the severity of I.A.'s injury, the course of treatment, and based on the record as a whole, I find that **$140,000.00** in compensation for actual pain and suffering is reasonable and appropriate in this case.

### IV.     Unreimbursable Expenses

Petitioners may be awarded reasonably necessary actual unreimbursable expenses that were incurred by or on behalf of the person who suffered a vaccine injury. Section 15(a)(1)(B).

Petitioner seeks $1,823.59 in past unreimbursable expenses. Pet. Br. at 7, SR at 1-2. Respondent opposes $523.33 of those for specific items including pencil grippers ($8.76), a bathroom safety shower ($34.68), a weighted blanket ($39.00), and a treadmill ($439.99). Opp. at 9. Respondent notes that the majority of these purchases occurred in 2019, with the treadmill purchased in December of 2020. *Id.*

Petitioner contends that the need for those expenses is evident from the records. Records from the rehabilitation hospital recommends adaptive equipment such as a shower chair and discussed I.A.'s struggles to hold a pencil. Ex. 3 at 60, 213. The weighted blankest is described as part of a self-care training activity designed to improve calming techniques. Ex. 4 at 119. Further, while there is no treatment record specifically references a treadmill, Petitioner contends that the treadmill was recommended by I.A.'s physical therapist. Reply at 4-5.

I find these expenses to be reasonable necessary *but for the treadmill*. For purchases of that financial magnitude, clear evidence of a recommendation by a medical professional is needed. This is not present for the treadmill. Therefore, I award $1,383.60 for past unreimbursable expenses.

### Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I award Petitioner a lump sum payment of $141,383.60 consisting of $140,000.00 for actual pain and suffering, and $1,383.60 for unreimbursable expenses to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.**

      This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[3]

**IT IS SO ORDERED.**

                                                                          **s/Brian H. Corcoran**
                                                                          Brian H. Corcoran
                                                                          Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.